In re Acquisition by Chittenden Solid Waste Dist. of Certain Prop. Interests by Eminent Domain, No. S1054-92 CnC
(Toor, J., Oct. 5, 2010)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| In re ACQUISITION BY CHITTENDEN SOLID WASTE DISTRICT OF CERTAIN PROPERTY INTERESTS BY EMINENT DOMAIN | Docket No. S1054-92 CnC |

RULING ON MOTION TO AMEND FINAL ORDER

A jury verdict was entered in this eighteen-year-old eminent domain matter in 2004, and a final judgment setting just compensation at $4 million was entered in 2005. The case was appealed, and that judgment was affirmed by the Vermont Supreme Court in 2007. However, the payment was not tendered to Hinesburg Sand & Gravel ("HS&G") by the Chittenden Solid Waste District ("District") until February 12, 2009. HS&G has now filed a "Motion to Amend Final Order" pursuant to V.R.C.P. 60(b).

Background

The legal basis for HS&G's motion is the Vermont Supreme Court's 2007 decision, in which the Court ruled that HS&G could raise the issue of changed value under Rule 60(b). In re Chittenden Solid Waste District, 2007 VT 28, ¶ 33, 182 Vt. 38. The Court held that "[t]he landowner is entitled to just compensation for the value of the condemned land *at the time of the taking*." Id. ¶ 32 (emphasis added). The "time of the taking" is the "date of the tender of compensation." Id. ¶ 33; s*ee also* id. ¶ 26 (an actual taking "occurs when the government tenders payment and acquires title to the land."). It is unclear to the court why the tender was not made immediately after the jury verdict to

stop the clock running, but it is undisputed that it did not occur until February 12, 2009. Thus, that is the date of the taking in this case.[1]

The Court noted that before any issue of increase in value is submitted to a jury, the property owner "must demonstrate to the court that grounds exist to grant relief from judgment under Rule 60(b)(6): that is, that there has been a material change in the value of the property between the date of the valuation and the date of the tender of compensation." Id. ¶ 33. If the court finds that a change has been established, the "narrow question of the increase in value can be submitted to the jury." Id. The date of the jury's valuation in this case was January 1, 2000. Id. ¶ 8. Thus, the question before the court today is whether HS&G has made a showing that the value of the property has changed between January 1, 2000 and February 12, 2009.

Discussion

To meet its burden here, HS&G first submitted an affidavit from Richard Sterner, who specializes in valuations for solid waste facilities. Analyzing the property in terms of its income value as a landfill, he values it as of February 2009 at $15,803,354. Nowhere in the affidavit does he say what the value would have been under such an income analysis in January of 2000. Nonetheless, a simple comparison of the $4 million jury award for the 2000 value and the almost $16 million valuation by Sterner would suggest a change in value between 2000 and 2009.

However, the District argues that HS&G has failed to establish any change because the method of valuation used by Sterner is entirely different from that used by

---

[1] For this reason, the court rejects the District's argument that the motion to amend should have been filed in 2007.

2

the experts at trial. In addition, the District argues that the trial experts for both parties and other courts have rejected the type of valuation Sterner did as being unreliable.

HS&G responds to this argument with a 1990 appraisal done for the District by Frank Bredice, pointing to his comment that the "Direct Sales Comparison Approach" to valuation was not applicable because the only comparables he could find were mostly in other states and "not enough like the Subject and close enough to use this analysis[.]" However, that report was over ten years before the original valuation date, and nineteen years before the taking date. It is thus of little value to the court.

HS&G next submits a supplemental affidavit from Sterner asserting his opinion that the value of the site increased materially between 2000 and 2009 "irrespective of appraisal methodology." He also explains why he believes the income approach is the most useful method of valuation of the property. However, as before, Sterner fails to give any value as of 2000 based upon the income approach.

HS&G does not dispute the District's representation that the valuations presented to the jury by both parties used an entirely different approach, the sales comparison approach. Nor do they dispute that both trial experts explicitly rejected the income approach. HS&G's own expert at trial, Steven Allen, rejected it "because properties like the subject as vacant land do parcels do not usually generate a defined income stream." Trial Transcript at 142 (Dec. 2, 2003). Mr. Allen noted that the income approach "may not be processed with a reasonable degree of reliability" in such situations. Id. at 142-43. Likewise, the District's expert at trial, George Silver, testified that the income approach "is predicated on the idea that cash flows to a property . . . are indicative of value. In the landfill market, there are very limited situations where properties are leased and the data is not . . . available to process this approach." Trial Tr. At 57 (Dec. 9, 2003). Given the

3

testimony of both trial experts that the income approach is invalid in a situation such as this, the court certainly cannot presume, as HS&G is asking it to do, that the income data now being proffered is a valid way to show a change from a value arrived at as a result of the sales comparison approach.

The court has before it figures reached in completely different ways, with no ability to compare them. The court concludes that the Sterner affidavits fail to establish, as the Supreme Court has required, that there was "a material change in the value of the property" between 2000 and 2009.

Finally, HS&G submits a draft letter – not an affidavit – from someone who appears to be an appraiser but does not so state. The draft letter states an opinion as to overall sales price trends in Chittenden county for residential and commercial properties between 2000 and 2009. The gist of the opinion is that commercial prices went up 70% in that time period.

The letter is far from sufficient evidence to meet HS&G's burden here. It is not admissible evidence as it is not even sworn to, it is a draft, and the author's credentials are not established. While the general information about sales trends might, if in an admissible form, be relevant and useful in corroborating an opinion about value with regard to this property, that is not enough here. It fails to establish anything about the actual valuation of the  property at issue here.

Order

The motion to amend is denied.

Dated at Burlington this 5th day of October, 2010.

_____
Helen M. Toor
Superior Court Judge

4